IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ARTHUR HOPPER,　　　　　　　　　　　　　　No. 6:13-cv-01525-HZ

　　　　　Plaintiff,　　　　　　　　　　　　　　OPINION & ORDER

　　v.

CAROLYN COLVIN, Commissioner,
Social Security Administration,

　　　　　Defendant.

Rory Linerud,
LINERUD LAW FIRM
P.O. Box 1105
Salem, OR 97308

　　　Attorney for Plaintiff

S. Amanda Marshall
United States Attorney, District of Oregon
Adrian L. Brown
Assistant United States Attorney
Ronald K. Silver
Assistant United States Attorney
U.S. ATTORNEY'S OFFICE , DISTRICT OF OREGON

1 - OPINION & ORDER

1000 SW Third Avenue, Suite 600
Portland, OR 97204

Lars J. Nelson
SOCIAL SECURITY ADMINSTRATION
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104-7075

      Attorneys for Defendant

HERNÁNDEZ, District Judge:

      Plaintiff Arthur Hopper brings this action for judicial review of the Commissioner's final decision denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act and for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. I have jurisdiction under 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1382(c)(3)). For the following reasons, I affirm the Commissioner's decision in part and reverse in part.

## BACKGROUND

      Mr. Hopper has a GED and a work history as an oil drilling "rough neck" and a tire repairer. Tr. 40–42. At the time of his hearing, he was fifty years old. Tr. 38. He alleges that he is disabled as a result of a combination of ailments including hepatitis C, with cirrhosis and fibrosis; diabetes mellitus type II with associated neuropathic leg pain; morbid obesity; schizoaffective disorder; and antisocial personality disorder. Pl. Br. at 2. Mr. Hopper has a history of abusing methamphetamine and alcohol, and had been sober for more than one year at the time of the hearing. Tr. 945. Mr. Hopper takes several medications, including metformin; he alleges metformin causes urinary incontinence. Tr. 19.

      Mr. Hopper applied for benefits on January 21, 2009, citing hypertension and diabetes with cellulitis in his feet, limiting his ability to walk. Tr. 271. He subsequently reported that he

was diagnosed with Hepatitis C on February 20, 2009, and that he has high blood pressure, high blood sugar, and PTSD.  Tr. 313, 327.

On February 2, 2012, Mr. Hopper appeared before Administrative Law Judge ("ALJ") Marilyn S. Mauer, represented by attorney Rory Linerud.  Tr. 35.  Mr. Hopper testified that he has no source of income.  Tr. 38.  He receives $200 per month in food stamps and a subsidy for his rent, utilities, and health care through the Veterans Administration.  Id.  He testified that his medication causes him to have an "emergency" if he is more than five feet from the restroom when he needs to use the bathroom.  Tr. 43.  He also testified that his right leg had gone completely numb two months prior to the hearing.  Tr. 44.  He stated he is unable to sit or to stand up for long periods of time, he has difficulty walking for more than 15 minutes, he has difficulty climbing stairs, he can comfortably lift no more than approximately 7 pounds, and he fatigues easily.  Tr. 46–49.  He also told the ALJ that he has difficulty focusing on tasks, and that he has difficulty getting along with other people and had been fired from jobs because of this.  Tr. 44, 49–50.  He described frequent nightmares, but said they are controlled by medication.  Tr. 50.  He further testified to hearing voices of people who are not there, which affects his ability to concentrate.  Tr. 54.

The ALJ denied Mr. Hopper's claim on April 12, 2012.  Mr. Hopper appealed the ALJ's decision to the Social Security Administration ("SSA") Appeals Counsel, which denied his request for review on July 1, 2013, making the ALJ's decision the Commissioner's final decision that is now before this Court on appeal.  Tr. 1.

## SEQUENTIAL DISABILITY ANALYSIS

A claimant is disabled if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can

3 - OPINION & ORDER

be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. See <u>Valentine v. Comm'r</u>, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, the agency uses a five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. <u>Id.</u>

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." <u>Yuckert</u>, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." <u>Yuckert</u>, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. <u>Yuckert</u>, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity ("RFC") to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner.

In step five, the Commissioner must establish that the claimant can perform other work. <u>Yuckert</u>, 482 U.S. at 141-42; <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098–1100 (9th Cir. 1999); 20

C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ found that Mr. Hopper had not engaged in substantial gainful activity since January 1, 2007, the onset date for Mr. Hopper's disability. Tr. 18, Finding 2. The ALJ noted that although Mr. Hopper "stated that he was placed in a job by a temporary agency, but . . . was fired from that job" after January 1, 2007, "this work activity did not rise to the level of substantial gainful activity." Id. At step two, the ALJ found that Mr. Hopper had "the following severe impairments: hepatitis C with moderate cirrhosis and moderate fibrosis, and without ascites or varices; diabetes mellitus type II with associated neuropathic leg pain; and morbid obesity." Tr. 19, Finding 3. At step three, the ALJ found that Mr. Hopper's impairments did not meet or equal the requirements of a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 22, Finding 4. The ALJ then assessed Mr. Hopper's RFC:

> Mr. Hopper has the residual function capacity to perform light work as defined in 20 CFR 404.1567(b). He should avoid all exposure to hazards such as unprotected heights or moving equipment that can cause crushing or cutting injuries. He should never climb ladders, ropes or scaffolds. He is capable of frequent stooping, crouching, crawling, kneeling, and climbing ramps or stairs. Mr. Hopper requires ready access to a restroom but not with a frequency that would affect productivity. He needs the option to sit or stand at will while performing essential tasks that primarily involve objects, rather than people. He should have no public contact and no more than occasional coworker contact that does not include any teamwork assignments.

Tr. 23, Finding 5. At step four, the ALJ found that Mr. Hopper could not perform any past relevant work. Tr. 25, Finding 6. Finally, at step five, the ALJ found Mr. Hopper was not disabled because he could perform jobs that existed in significant numbers in the national economy, such as Assembler, Small Products I and Electronics Assembler. Tr. 25–26, Finding 10.

5 - OPINION & ORDER

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.

This court must weigh the evidence that supports and detracts from the ALJ's conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. Id. (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)); see also Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. Id.; see also Batson, 359 F.3d at 1193. However, this Court cannot now rely upon reasoning the ALJ did not assert in affirming the ALJ's findings. Bray, 554 F.3d at 1225–26 (citing SEC v. Chenery Corp., 332 U.S. 194, 196 (1947)); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) (citing same).

## DISCUSSION

Mr. Hopper argues that the ALJ's decision was not supported by substantial evidence in the record. Particularly, he asserts the ALJ erred in three ways: (1) that she determined his RFC without substantial evidence to support the included limitations; (2) that she posed an incomplete and ambiguous hypothetical to the Vocational Expert ("VE"); and (3) that she relied on

testimony from the VE that contradicted the Dictionary of Occupational Titles without soliciting an explanation for that contradiction from the VE. Pl. Br. at 6, 11, 13.

### I. Mr. Hopper's Residual Functioning Capacity

Mr. Hopper contends that the ALJ prepared an erroneous RFC. Pl. Br. at 6–7. Mr. Hopper asserts that the ALJ "formulated significant parts of [his] RFC including physical and mental capacities, without any respective medical evidence, or factual support." Id. at 7. Specifically, he argues that there was no "medical opinion or guidance, or other evidentiary record to support" the following restrictions: "1) ready access to a restroom but not with a frequency that would affect productivity; 2) needs the option to sit or stand at will while still able to perform essential tasks; and 3) no more than occasional co-worker contact, that does not include any teamwork assignments." Id.[1] Mr. Hopper's claim is not that the ALJ failed to account for certain limitations that were supported by substantial evidence, but instead that she limited Mr. Hopper *further* than was supported by the substantial medical evidence.

When determining a claimant's RFC, an ALJ only needs to account for the claimant's limitations that are supported by substantial evidence in the record. Robbins, 466 F.3d at 886 (citing Osenbrock v. Apfel, 240 F.3d 1157, 1163–65 (9th Cir. 2001)). Additionally, the ALJ also must consider the effect of all limitations that are supported by substantial evidence. Id.

I do not find, and neither party provided, any binding precedent addressing whether an ALJ errs in creating an RFC which is more favorable to the claimant than the medical evidence in the record. However, the Tenth Circuit Court of Appeals has held that an ALJ "does not commit reversible error by electing to temper [the] extremes [of an adverse medical opinion] for the claimant's benefit." Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012). And, a district

---

[1] Although Mr. Hopper characterizes these three limitations as "examples" of the ALJ's error, Mr. Hopper makes no argument with respect to the other restrictions in the RFC. A disability claimant has the burden to prove disability. Valentine, 574 F.3d at 689. Mr. Hopper cannot prove he is disabled on the basis of arguments he does not make.

court in this circuit recently followed Chapo in holding that "[a]lthough the ALJ found Plaintiff more impaired than the reviewing doctors, Plaintiff has not cited any authority indicating that an ALJ cannot moderate the full adverse force of a medical opinion in a manner that is more favorable to a claimant." Kravat-Jahner v. Colvin, CV-13-00142-PHX-BSB, 2014 WL 880506, at *12 (D. Ariz. Mar. 6, 2014) (citing Chapo, 682 F.3d at 1288) (internal quotation marks omitted); see also Petty v. Colvin, CV-12-02289-PHX-BSB, 2014 WL 1116992, at *17 (D. Ariz. Mar. 17, 2014) (same).

Further, an error in an RFC is harmless if it is irrelevant to the jobs the ALJ identifies based on the RFC. Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008) (concluding "to the extent the ALJ's RFC finding erroneously omitted Stubbs–Danielson's postural limitations (only occasional balancing, stooping, and climbing of ramps and stairs), any error was harmless since [the identified jobs] require infrequent stooping, balancing, crouching, or climbing").

Mr. Hopper's claim fails because, even assuming that the ALJ did adopt limitations on Hopper's RFC beyond those that the medical evidence supported, this would only serve to benefit Mr. Hopper.

### A. "Ready Access to the Restroom but Not with a Frequency that Would Affect Productivity"

Mr. Hopper argues that the ALJ erred in concluding that Mr. Hopper required "ready access to the restroom but not with a frequency that would affect productivity." He contends that she formulated this portion of the RFC without "medical evidence or factual support." Pl. Br. at 7. He further asserts that "[t]he issue with restroom access involves the frequency of trips, and the amount of time dedicated to each restroom break," and therefore the ALJ's conclusion that

Mr. Hopper's would need to access the restroom, but not with a frequency that would affect his productivity, required "additional medical opinion" evidence. Id. at 9.

As discussed above, the ALJ does not err by adopting a *more* restrictive RFC than the evidence in the record supports. Chapo, 682 F.3d at 1288

The ALJ's decision to limit Mr. Hopper to "ready access to the restroom but not with a frequency that would affect productivity" was based on Mr. Hopper's testimony. As the ALJ explained: "Although the record does not reflect complaints of urinary incontinence, based on Mr. Hopper's testimony, he should work in areas with ready access to the bathroom." Tr. 25.

Neither the medical record, nor Mr. Hopper's testimony, support a conclusion that Mr. Hopper suffers from urinary incontinence. Mr. Hopper testified that because of his metformin when he has to "go to the bathroom, if [he is] more than five feet away, [he is] going to have an emergency." Tr. 43. This testimony says nothing about the frequency or duration of Mr. Hopper's restroom trips; it only speaks to their urgency. Nor does it provide any basis for the ALJ to doubt the other evidence in the record showing that Mr. Hopper has repeatedly denied incontinence to medical providers. See Tr. 607 ("Denies any genitourinary complaints"), 736 (same). While hospitalized, Mr. Hopper told hospital staff that he did not require a bed-side urinal because he was capable of walking to the bathroom if he needed to urinate. Tr. 596, 726. Mr. Hopper complained of "frequent" urination due to "high blood sugars and drinking more liquids" to his medical provider, but he otherwise denied adverse genitourinary symptoms. Tr. 590, 719.

Based on Mr. Hopper's testimony and the other evidence in the record, it was reasonable for the ALJ to infer that Mr. Hopper required ready access to a restroom. However, there was no support for the conclusion that Mr. Hopper was incontinent or would require restroom breaks at a

frequency that would be disruptive to his ability to work. Even if the ALJ should not have specified at what frequency Mr. Hopper would need to access the restroom in the RFC, the RFC accurately captured the full extent of Mr. Hopper's possible limitation.

Further, to the extent the ALJ diverged from the evidence in the record, she did so to Mr. Hopper's benefit. By automatically eliminating from consideration any jobs that did not provide ready access to a restroom, the ALJ increased the likelihood that she would find Mr. Hopper to be disabled. The ALJ did not err and, even assuming the ALJ erred, that error was harmless.

### B. "Sit or Stand at Will While Still Able to Perform Essential Tasks"

Mr. Hopper argues that the ALJ's decision to limit him to "sitting or standing at will while still able to perform essential tasks" was erroneous because it is not supported by any medical evidence. Pl. Br. at 7.

The ALJ may rely on reports by non-treating physicians if they "are consistent with independent clinical findings or other evidence in the record." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).

With respect to Mr. Hopper's physical limitations, there is no medical opinion evidence in the record other than two state agency physician reports prepared by Drs. Kehrli and Jenson. Tr. 363–70, 509–16. Mr. Hopper identifies no evidence in the record contradicting these reports, which rely on other medical evidence in the record. Tr. 370, 516. The physician reports both conclude that Mr. Hopper was capable of sitting or standing for "about 6 hours out of an 8-hour workday." Tr. 364, 510. Mr. Hopper testified that he could sit for no longer than one hour without having to stand up, and could stand for no longer than fifteen minutes without having to sit down. Tr. 48. It appears the ALJ "moderated" the adverse conclusions of the medical experts in Mr. Hopper's favor. There is no evidence in the record, aside from his testimony, supporting the sit/stand limitation.

10 - OPINION & ORDER

The ALJ specifically asked the VE whether a person with a sit/stand limitation could perform as an Assembler, Small Products I or an Electronics Assembler. Tr. 59. In response, the VE explained that Assembler, Small Products I and Electronic Assembler are both occupations that someone could perform while sitting and standing at will. Id. ("These are both bench work occupations . . . one can work at a bench with a stool and change positions at will."). Thus, an individual who can sit for no more than an hour and stand for no more than 15 minutes, consistent with Mr. Hopper's testimony, can perform the job duties of an Assembler, Small Products I or an Electronics Assembler. Therefore, even assuming that the ALJ erred by including this limitation in the RFC, Mr. Hopper received credit for the full extent of his possible limitations.

By including a sit/stand limitation the ALJ made it more likely that Mr. Hopper would be found disabled than if she had relied solely on the medical opinion evidence in the record.

      C.    **"No More than Occasional Co-Worker Contact, that Does Not Include Any Teamwork Assignments"**

Mr. Hopper challenges the ALJ's finding that he should have "no more than occasional co-worker contact that does not include teamwork assignments" because he claims the ALJ came to this conclusion "without evidence." Pl. Br. at 9.

An examining physician's "opinion alone constitutes substantial evidence, because it rests on his own independent examination of [the claimant]." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).

The ALJ explained: "Mr. Hopper does not have a severe mental impairment, but in giving some consideration to Mr. Hopper's history and reports of fatigue and discomfort," she found that "Mr. Hopper is capable of performing simple work with limited interactions with others." Tr. 25. The ALJ concluded that Mr. Hopper does not have a severe mental impairment

11 - OPINION & ORDER

based on the uncontradicted opinion of examining psychologist Paula Belcher, Ph.D. Tr. 21. Dr. Belcher assessed Mr. Hopper as having no impairment in understanding and remembering simple instructions or carrying out simple tasks. Tr. 948. She also found that he required no restrictions on interacting appropriately with the public and mild restrictions interacting appropriately with supervisors and co-workers. Tr. 950. Dr. Belcher's opinion is substantial evidence because it is based on her independent examination.

The ALJ again characterized Mr. Hopper as more limited than the medical evidence in the record supported. Because this only served to make a finding of disability more likely, the ALJ did not err. Even assuming the ALJ erred, that error was harmless.

### D. ALJ's Duty to Develop the Record

Mr. Hopper asserts the ALJ failed to afford him a full and fair hearing because she developed an RFC "based solely on her own interpretation of Hopper's impairments" and not on medical opinion evidence. Pl. Br. at 9. He argues that because the ALJ's RFC diverged from the opinions of the medical experts, she must have believed that the state agency physician reports were inaccurate or otherwise provided an inadequate basis for a decision. Id. at 9–10. Therefore, Mr. Hopper argues that the ALJ had a duty to seek additional "medical examinations of [Mr. Hopper's] impairments prior to concluding the RFC." Id.

When an ALJ finds "the record is inadequate to allow for proper evaluation of the evidence," the ALJ has a "duty to 'conduct an appropriate inquiry.'" Tonapetyan, 242 F.3d at 1150 (quoting Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996); and citing Armstrong v. Commissioner of Soc. Sec. Admin., 160 F.3d 587, 590 (9th Cir. 1998)). Once this duty has been triggered the "ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." Id. (citing

Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998); Smolen, 80 F.3d at 1288). In addition, an ALJ has the authority to order additional examinations of a claimant. 20 C.F.R. § 404.1517.

However, an ALJ's failure to fully develop the record is harmless error if "it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" Garcia v. Comm'r of Soc. Sec., 768 F.3d 925, 929 (9th Cir. 2014) (quoting Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008)). In other words, where the result would have been the same regardless of the error, reversal is not appropriate.

Mr. Hopper insinuates that the ALJ's divergence from the state agency physicians' opinions reveals that she "acknowledged" that the record was inadequate to support the RFC. Pl. Br. at 10. But, the ALJ does not indicate that she found the record to be inadequate, and Mr. Hopper provides no authority for the proposition that an ALJ is prohibited from accounting for a claimant's testimony in an RFC, without first ordering a consultative examination, when the result is to limit the claimant further than the medical evidence suggests. Instead, as discussed above, the divergences between the RFC and the objective medical evidence simply reveal that the ALJ chose to moderate the medical evidence in Mr. Hopper's favor.

In addition, the ALJ left the record open for supplementation at the conclusion of the hearing: "I'll hold this record open for two weeks for you to get me the updated VA records. If you need any longer, please let me know." Tr. 60. In her decision, the ALJ made clear that any additional medical records submitted by Mr. Hopper were "reviewed in making [her] determination." Tr. 16.

Finally, even assuming the ALJ erred by failing to further supplement the record, that error is harmless because it was inconsequential to the extent of the limitations included in the RFC. By moderating the evidence in Mr. Hopper's favor, the ALJ arrived at an RFC that

included some limitations that were supported only by Mr. Hopper's testimony. Mr. Hopper merely speculates that the result would have been different if the ALJ had ordered further medical examination. There is nothing to indicate that further development of the record would have yielded an RFC including still *more* limitations.

## II.    Vocational Hypothetical

Mr. Hopper also challenges the adequacy of the hypothetical the ALJ posed to the VE. However, a claim that a vocational hypothetical is erroneous presents no issues distinct from a claim that an RFC is erroneous. See Stubbs-Danielson, 539 F.3d at 1175–76 ("In arguing the ALJ's hypothetical was incomplete, Stubbs-Danielson simply restates her argument that the ALJ's RFC finding did not account for all her limitations because the ALJ improperly discounted her testimony and the testimony of medical experts."). Accordingly, this claim fails for the same reasons as Mr. Hopper's claim with respect to his RFC.

## III.   Vocational Expert Testimony

Mr. Hopper asserts that the ALJ relied on erroneous testimony from the VE because that testimony "contradicts information contained in the Dictionary of Occupational Titles ["DOT"]." Pl. Br. at 13. Defendant argues that there was no apparent conflict between the DOT and the VE's testimony, in part because the ALJ's intent can be discerned by reference to two Social Security Rulings. Def. Br. at 16–17. I find that the ALJ erred by failing to account for an apparent conflict between the DOT definitions of Assembler, Small Products I and Electronics Assembler and the portion of the VE's testimony providing that Mr. Hopper should never be exposed to hazards such as moving equipment that can cause crushing or cutting injuries.

///

///

> A.   The ALJ Erred by Failing to Account for an Apparent Conflict Between the DOT and the VE's Testimony.

Mr. Hopper argues that the VE testified inconsistently with the DOT when he testified that an individual could perform the functions of an Assembler, Small Products I or Electronics Assembler with the following limitations: "never be exposed to hazards such as moving equipment that can cause crushing or cutting injuries" and "occasional co-worker contact, but no teamwork assignments." Id. at 13–14.

The job classifications in the Dictionary of Occupational Titles are presumed to be accurate. Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995). The ALJ must determine if there is a conflict between the DOT and the VE's testimony. Massachi v. Astrue, 486 F.3d 1149, 1153 (9th Cir. 2007). The ALJ errs by failing to ask the VE if his or her testimony contradicts the DOT. Id. at 1153–54. That error may be harmless if there is no conflict between the DOT and the VE's testimony. Id. at 1154 n.19. Where there is a conflict between the DOT and the VE's testimony the ALJ "must elicit a reasonable explanation for the conflict before relying on the VE." Skelton v. Comm'r of Soc. Sec., 06:13-CV-01117-HZ, 2014 WL 4162536, at *12 (D. Or. Aug. 18, 2014) (citing Soc. Sec. Ruling (SSR) 00–4p, available at 2000 WL 1898704; Massachi, 486 F.3d at 1153). See also Bray, 554 F.3d at 1234 ("The ALJ has 'an affirmative responsibility' to inquire as to the reasons and evidentiary basis for the VE's deviation.") (quoting SSR 00–4p). If the ALJ determines that the VE's explanation for the conflict is reasonable, the ALJ may rely on the VE's testimony despite the conflict. Skelton, 2014 WL 4162536, at *12 (citing Massachi, 486 F.3d at 1153).

The ALJ asked VE Mark A. McGowan: "If at any time today your testimony is inconsistent with the Dictionary of Occupational Titles, will you point out that inconsistency and explain the reason for it?" to which the VE responded in the affirmative. Tr. 55.

15 - OPINION & ORDER

The ALJ posed the following hypothetical to the VE:

> I'd like you to assume an individual who is closely approaching advanced age who can perform light work as that is defined in the Dictionary of Occupational Titles and who has [Mr. Hopper's past work experience]. The individual has limitations on the ability to perform the full range of light work, including the individual should never climb ladders, ropes, or scaffolds, and the individual should never be exposed to hazards such as unprotected heights or moving equipment that can cause crushing or cutting injuries. The individual can frequently climb ramps and stairs, stoop, crouch, kneel, and crawl. The individual requires—has to work in a situation where there's ready access to a restroom. So, in other words, no working out of doors where there's no restroom facility available. The individual can understand and carry out simple instructions in tasks that work primarily with objects, not people. The individual should have no public contact and can have occasional coworker contact, but no teamwork assignments.

Tr. 56–57. McGowan testified that Mr. Hopper would be able to perform the functions of both an Assembler, Small Products I and an Electronics Assembler. Tr. 57–58.

The DOT entry for "Assembler, Small Products I" states that the position requires working "as a member of [an] assembly group." The VE's testimony that an individual could perform this task while limited to "occasional co-worker contact, but no teamwork assignments" does not conflict with the DOT, which describes interactions with people as "not significant." DICOT 706.684-022, available at 1991 WL 679050.

However, there is an apparent conflict between the DOT and the VE's testimony that Assembler, Small Products I and Electronics Assembler can be performed without exposure to "hazards" including "moving equipment that can cause crushing or cutting injuries." The DOT entry for "Assembler, Small Products I" states that the an individual performing the job "[b]olts, screws, clips, cements, or otherwise fastens parts together by hand or using handtools or portable powered tools" and also "[l]oads and unloads previously setup machines, such as arbor presses, drill presses, taps, spot-welding machines, riveting machines, milling machines, or broaches, to perform fastening, force fitting, or light metal-cutting operation on assembly line." DICOT 706.684-022, available at 1991 WL 679050. An "Electronics Assembler" "[c]rimps, stakes,

16 - OPINION & ORDER

screws, bolts, rivets, welds, solders, cements, press fits, or performs similar operations to join or secure parts in place, using handtools, power tools, machines, and equipment." DICOT 726.684-018, available at 1991 WL 679596.

Because the RFC specifically prohibited Mr. Hopper from engaging in jobs involving the potential for "crushing or cutting" injuries, there is an apparent conflict between that RFC and jobs that require "cutting" and "crimp[ing]." The ALJ therefore had a duty to seek an explanation from the VE. The ALJ erred by relying on the VE's testimony, and as a result, the Commissioner has not met her burden of proof to demonstrate that there are jobs available in sufficient numbers that Mr. Hopper can perform.

**B.     Defendant May Not Rely on a *Post-hoc* Rationalization of the Conflict.**

Defendant argues that there was no conflict by pointing out that the DOT entries for Assembler, Small Products I and Electronics Assembler do not include the condition "[m]oving mechanical parts." Defendant further contends that "[t]he ALJ's hypothetical evinces that the ALJ intended to preclude Mr. Hopper from jobs requiring unusual hazards" as opposed to ordinary workplace hazards. Def. Br. at 16–17. Defendant then states that the DOT reveals that because these two jobs do not include "moving mechanical parts" they involve no "unusual hazards," a term which Defendant argues is defined by the SSA to include "moving mechanical parts of equipment, tools or machinery." Id. (citing SSR 85-15, 1985 WL 56857, at *8 (1985); SSR 96-9p, 1996 WL 374185, at *9 (July 2, 1996)).

This Court cannot affirm a decision by an ALJ based on a *post hoc* rationalization of the ALJ's decision. See Bray 554 F.3d at 1225 ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been

thinking.") (citations omitted). Defendant's line of reasoning is not apparent from the ALJ's decision. Tr. 26. Even if Defendant has accurately captured the ALJ's line of reasoning, it is the ALJ that must explain her decision, not this Court. Accordingly, Defendant's attempt to rationalize the ALJ's decision *post hoc* is unavailing.

**IV.   Remand**

Remand for further proceedings is appropriate in this case. The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000). The issue turns on the utility of further proceedings. "A remand [for further proceedings] is appropriate where additional administrative proceedings could remedy defects" in the original proceeding. Bilby v. Schweiker, 762 F.2d 716, 719 (9th Cir. 1985).

Because the VE's testimony conflicted with the DOT, the record does not reveal any evidence of jobs Mr. Hopper can perform. Although this conflict mandates reversal, it does not mandate a finding of disability because a useful purpose would be served by further proceedings. On remand, the ALJ will have the opportunity to elicit an explanation of the apparent conflict between the VE's testimony and the DOT descriptions of Assembler, Small Products I and Electronics Assembler, or to identify other jobs that Mr. Hopper is capable of performing.

///

///

///

///

///

///

**CONCLUSION**

The Commissioner's decision is affirmed in part and reversed in part and remanded for additional proceedings related to the issue of obtaining VE testimony that is not in conflict with the DOT.

IT IS SO ORDERED.

Dated this  14  day of  Nov , 2014

*/s/ Marco Hernández*
MARCO A. HERNÁNDEZ
United States District Judge